

FILED
IN OPEN COURT

NOV  9 2017

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:16cr209 |
| | ) | |
| JUAN CARLOS GUADRON-RODRIGUEZ, | ) | Count 1: 18 U.S.C. § 371 |
| a.k.a. "Carlos Carranza" and "Chispa," | ) | Conspiracy |
| (Counts 1 – 5) | ) | |
| | ) | Counts 2 – 5: 18 U.S.C. §§ |
| MANUEL ANTONIO CENTENO, | ) | 1952(a)(3) & 2 |
| a.k.a. "Darky and Madrid," | ) | Use of Interstate Facilities in Aid of |
| (Counts 1, 6 - 8, 10) | ) | Specified Unlawful Activity |
| | ) | |
| DUBLAS ARISTIDES LAZO, | ) | Count 6: 18 U.S.C. § 1201(c) |
| a.k.a. "Caballo," | ) | Conspiracy to Commit Kidnapping |
| (Counts 6 - 8) | ) | |
| | ) | Count 7: 18 U.S.C. § 1959(a)(5) |
| LELIS EZEQUIEL TREMINIO-TOBAR, | ) | Conspiracy to Commit Kidnapping |
| a.k.a. "Scooby", Decente," and "Jefferson," | ) | and Murder in Aid of Racketeering |
| (Counts 6 - 8) | ) | |
| | ) | Count 8: 18 U.S.C. §§ 1201(a)(1) |
| CARLOS JOSE BENITEZ PEREIRA, | ) | & 2 |
| a.k.a. "Negro," | ) | Kidnapping Resulting in Death |
| (Counts 6 - 8) | ) | |
| | ) | Count 9: 18 U.S.C. § 3 |
| DANIEL OSWALDO FLORES-MARAVILLA, | ) | Accessory After the Fact |
| a.k.a. "Impaciente," "Flaco," and "Gatito," | ) | |
| (Counts 6 - 8) | ) | Count 10: 8 U.S.C. § 1326(a) |
| | ) | Illegal Re-entry After Deportation |
| ANDRES ALEXANDER VELASQUEZ | ) | |
| GUEVARA, | ) | Forfeiture – 18 U.S.C. § |
| a.k.a. "Pechada," | ) | 981(a)(1)(C) & 28 U.S.C. § 2461(c) |
| (Count 6) | ) | |
| | ) | |
| SHANNON MARIE SANCHEZ, | ) | |
| a.k.a. "Flaca," | ) | |
| (Counts 7, 9) | ) | |
| | ) | |
| Defendants. | ) | |

THIRD SUPERSEDING INDICTMENT

November 2017 Term - at Alexandria

1

THE GRAND JURY CHARGES THAT:

<u>GENERAL ALLEGATIONS</u>

At all times relevant to this third superseding indictment:

1.    The defendants, JUAN CARLOS GUADRON-RODRIGUEZ, also known as "Carlos Carranza" and "Chispa," MANUEL ANTONIO CENTENO, also known as "Darky" and "Madrid," DUBLAS ARISTIDES LAZO, also known as "Caballo," LELIS EZEQUIEL TREMINIO-TOBAR, also known as "Scooby," "Decente," and "Jefferson," CARLOS JOSE BENITEZ PEREIRA, also known as "Negro," DANIEL OSWALDO FLORES-MARAVILLA, also known as "Impaciente," "Flaco," and "Gatito," ANDRES ALEXANDER VELASQUEZ GUEVARA, also known as "Pechada," and SHANNON MARIE SANCHEZ, also known as "Flaca," were members and associates of La Mara Salvatrucha, also known as MS-13. MS-13 is a violent international street gang involved in a variety of criminal activities, including aggravated assault, extortion, abduction, kidnapping, murder, and obstruction of justice, in the Eastern District of Virginia and elsewhere.

2.    MS-13 members and associates are located throughout the United States, including Virginia, Maryland, Ohio, Texas, and California. MS-13 also has a large international presence in El Salvador, Guatemala, Honduras, and Mexico. MS-13 recruits members and associates predominantly from the Hispanic community.

3.    In order to protect the power, reputation, and territory of MS-13, members and associates are required to use violence, threats of violence, and intimidation. These acts of violence include murder and assault with deadly weapons, including firearms and knives. MS-13 members and associates maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts.

4.      MS-13 recruits are indoctrinated into MS-13 rules, which are ruthlessly enforced. One prominent rule encourages MS-13 members and associates to confront, fight, and kill rival gang members, known as "chavalas."

5.      MS-13 is organized into local groups known as "cliques" that hold regular meetings to coordinate gang activities. Each clique is run by the senior leader, who is designated the "First Word," and the second-in-command, who is designated the "Second Word." The other members and associates of the clique take their orders from the "First Word" or "Second Word." The leaders of the respective cliques attend larger general meetings to manage gang operations on a regional and international level.

6.      MS-13 members must attend clique meetings. At each clique meeting, members are required to pay dues to clique leaders. At times, MS-13 members are also expected to obtain money through illegal means, including, but not limited to, extortion, which is provided to clique leaders. The money is used to finance clique activities, to provide support for clique members who are in jail, and to send money to MS-13 leadership in El Salvador.

7.      The Virginia Locos Salvatrucha ("VLS") is an MS-13 clique operating in Northern Virginia and elsewhere. Wilmer Javier Viera-Gonzalez was the "First Word" of VLS. DUBLAS ARISTIDES LAZO was the "Second Word" of VLS.

8.      JUAN CARLOS GUADRON-RODRIGUEZ, LELIS EZEQUIEL TREMINIO-TOBAR, CARLOS JOSE BENITEZ PEREIRA, DANIEL OSWALDO FLORES-MARAVILLA, ANDRES ALEXANDER VELASQUEZ GUEVARA, and SHANNON MARIE SANCHEZ were all members or associates of the VLS clique of MS-13.

9.      MANUEL ANTONIO CENTENO was a member of the Silvas Locos Salvatrucha ("SLS") clique of MS-13. CENTENO associated with the VLS clique.

10.     SHANNON MARIE SANCHEZ permitted members of MS-13 to use her residence, which was located in Leesburg, Virginia, within the Eastern District of Virginia, to meet, plan, and coordinate their gang activity.

## COUNT ONE

### (Conspiracy)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

From at least in and around January 2016 through in and around April 2016, in Leesburg, Virginia, within the Eastern District of Virginia, and elsewhere, defendants JUAN CARLOS GUADRON-RODRIGUEZ, also known as "Carlos Carranza" and "Chispa," and MANUEL ANTONIO CENTENO, also known as "Darky" and "Madrid," did knowingly combine, conspire, confederate and agree with each other, and with others, known and unknown to the Grand Jury, to commit the following offense against the United States:

    (a)    to knowingly use, and cause others to use, facilities in interstate commerce, specifically cellular telephones, with the intent to promote, carry on, and facilitate the promotion and carrying on of an unlawful activity, that is extortion, in violation of Va. Code Ann. § 18.2-59, and thereafter performed an act to promote and carry on, and to facilitate the promotion and carrying on of such unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

### MANNER AND MEANS OF THE CONSPIRACY

The purpose of the conspiracy was to extort money from an individual (hereinafter the "Victim") in the Eastern District of Virginia for the benefit of MS-13 by way of threatening violence and death to the Victim and the Victim's family. The manner and means by which the conspirators conducted the conspiracy included the following:

1.      It was part of the conspiracy that conspirators, who were members and associates of MS-13, demanded that the Victim make extortion payments, which conspirators referred to as "rent," to members of MS-13 on a weekly or bi-weekly basis.

2.      It was further part of the conspiracy that conspirators contacted the Victim via cellular telephone calls, text messages, and social media messaging applications on the Victim's cellular telephone to make demands for the "rent."

3.      If was further part of the conspiracy that members of the conspiracy threatened to kill the Victim or the Victim's family if the Victim failed to make the required "rent" payments.

OVERT ACTS

In furtherance of the conspiracy and to effect the object thereof, the defendants and co-conspirators performed the following overt acts in the Eastern District of Virginia:

1.      In and around late January 2016, in Leesburg, Virginia, Wilmer Javier Viera-Gonzalez placed the barrel of a handgun to the Victim's head because the Victim had previously failed to pay money.

2.      In and around late January 2016, in Leesburg, Virginia, as he held the Victim at gunpoint, Viera-Gonzalez took $200 from the Victim and threatened the Victim and the Victim's family.

3.      On or about January 30, 2016, a co-conspirator ("CC-1") sent a text message to the Victim demanding that the Victim make a "rent" payment to members of MS-13.

4.      On or about February 2, 2016, CC-1 sent a text message to the Victim demanding that the Victim make a "rent" payment to members of MS-13.

5.      On or about March 3, 2016, CC-1 and GUADRON-RODRIGUEZ met the Victim at the Green Turtle Restaurant in Leesburg, Virginia, and collected a $150 "rent" payment.

6

6.      On or about March 3, 2016, while at the Green Turtle Restaurant in Leesburg, Virginia, GUADRON-RODRIGUEZ called Viera-Gonzalez on Viera-Gonzalez's cellular telephone in order for Viera-Gonzalez to discuss "rent" payments with the Victim.

7.      On or about March 20, 2016, in Leesburg, Virginia, Viera-Gonzalez and CENTENO attempted to abduct the Victim near the Leesburg Outlet Mall for a missed "rent" payment.

8.      On or about March 20, 2016, in Leesburg, Virginia, Viera-Gonzalez demanded that the Victim get into the car that Viera-Gonzalez was driving.

9.      On or about March 20, 2016, in Leesburg, Virginia, CENTENO told the Victim to get into the car that Viera-Gonzalez was driving, and racked the slide of a handgun.

10.     On or about March 23, 2016, GUADRON-RODRIGUEZ met the Victim at the Green Turtle Restaurant in Leesburg, Virginia, and collected a $100 "rent" payment.

11.     On or about March 23, 2016, shortly after GUADRON-RODRIGUEZ collected the rent payment from the Victim, Viera-Gonzalez called GUADRON-RODRIGUEZ, who attempted to call the Victim so that Viera-Gonzalez could speak with the Victim.

12.     On or about March 31, 2016, GUADRON-RODRIGUEZ met the Victim at the Green Turtle Restaurant in Leesburg, Virginia, and collected a $100 "rent" payment.

13.     On or about March 31, 2016, while at the Green Turtle Restaurant, GUADRON-RODRIGUEZ called Viera-Gonzalez on Viera-Gonzalez's cellular telephone for Viera-Gonzalez to speak with the Victim about the March 20, 2016 attempted abduction and the frequency of the Victim's rent payments.

14.     On or about April 14, 2016, CC-1 met the Victim near a Walgreens in Leesburg, Virginia, and collected a $200 "rent" payment.

(In violation of Title 18, United States Code, Section 371.)

## COUNT TWO

(Use of Interstate Facilities in Aid of Specified Unlawful Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about March 3, 2016, in Leesburg, Virginia, within the Eastern District of Virginia, defendant JUAN CARLOS GUADRON-RODRIGUEZ, did knowingly use, and cause others to use, facilities in interstate commerce, specifically cellular telephones, with the intent to promote, carry on, and facilitate the promotion and carrying on of an unlawful activity, that is extortion, in violation of Va. Code Ann. § 18.2-59, and thereafter performed an act to promote and carry on, and to facilitate the promotion and carrying on of such unlawful activity, specifically, the collection of a $150 extortion payment.

(In violation of Title 18, United States Code, Sections 2 and 1952(a)(3).)

## COUNT THREE

(Use of Interstate Facilities in Aid of Specified Unlawful Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about March 23, 2016, in Leesburg, Virginia, within the Eastern District of Virginia, defendant JUAN CARLOS GUADRON-RODRIGUEZ did knowingly use, and cause others to use, facilities in interstate commerce, specifically cellular telephones, with the intent to promote, carry on, and facilitate the promotion and carrying on of an unlawful activity, that is extortion, in violation of Va. Code Ann. § 18.2-59, and thereafter performed an act to promote and carry on, and to facilitate the promotion and carrying on of such unlawful activity, specifically, the collection of a $100 extortion payment.

(In violation of Title 18, United States Code, Sections 2 and 1952(a)(3).)

## COUNT FOUR

(Use of Interstate Facilities in Aid of Specified Unlawful Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about March 31, 2016, in Leesburg, Virginia, within the Eastern District of Virginia, defendant JUAN CARLOS GUADRON-RODRIGUEZ, did knowingly use, and cause others to use, facilities in interstate commerce, specifically cellular telephones, with the intent to promote, carry on, and facilitate the promotion and carrying on of an unlawful activity, that is extortion, in violation of Va. Code Ann. § 18.2-59, and thereafter performed an act to promote and carry on, and to facilitate the promotion and carrying on of such unlawful activity, specifically, the collection of a $100 extortion payment.

(In violation of Title 18, United States Code, Sections 2 and 1952(a)(3).)

11

## COUNT FIVE

(Use of Interstate Facilities in Aid of Specified Unlawful Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about April 14, 2016, in Leesburg, Virginia, within the Eastern District of Virginia, defendant JUAN CARLOS GUADRON-RODRIGUEZ did knowingly use, and cause others to use, facilities in interstate commerce, specifically cellular telephones, with the intent to promote, carry on, and facilitate the promotion and carrying on of an unlawful activity, that is extortion, in violation of Va. Code Ann. § 18.2-59, and thereafter performed an act to promote and carry on, and to facilitate the promotion and carrying on of such unlawful activity, specifically, the collection of a $200 extortion payment.

(In violation of Title 18, United States Code, Sections 2 and 1952(a)(3).)

12

## COUNT SIX

(Conspiracy to Commit Kidnapping)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

In and around April 2016 through on or about May 24, 2016, in Leesburg, Virginia, within the Eastern District of Virginia and elsewhere, defendants MANUEL ANTONIO CENTENO, also known as "Darky" and "Madrid," DUBLAS ARISTIDES LAZO, also known as "Caballo," LELIS EZEQUIEL TREMINIO-TOBAR, also known as "Scooby," "Decente," and "Jefferson," CARLOS JOSE BENITEZ PEREIRA, also known as "Negro," DANIEL OSWALDO FLORES-MARAVILLA, also known as "Impaciente," "Flaco," and "Gatito," and ANDRES ALEXANDER VELASQUEZ GUEVARA, also known as "Pechada," did knowingly combine, conspire, confederate, and agree with each other, and with others, known and unknown to the Grand Jury, to unlawfully and willfully seize, inveigle, decoy, kidnap, abduct, and carry away and hold for ransom, reward and otherwise, Carlos Otero-Henriquez, in violation of Title 18, United States Code, Section 1201(a)(1).

### MANNER AND MEANS OF THE CONSPIRACY

The purpose of the conspiracy was to adhere to MS-13's rule of attacking and killing individuals who are identified as being rival gang members. The manner and means by which the conspirators conducted the conspiracy included the following:

1. It was part of the conspiracy that conspirators, who were members and associates of MS-13, identified Carlos Otero-Henriquez as a member of the rival 18th Street gang.

2.    It was further part of the conspiracy that conspirators conducted an "investigation" to confirm that Carlos Otero-Henriquez was a member of 18th Street gang.

3.    It was further part of the conspiracy that conspirators lured Carlos Otero-Henriquez into a vehicle occupied by members and associates of MS-13, and then drove him to another location in order to attack and kill him.

4.    It was further part of the conspiracy that, after kidnapping and murdering Carlos Otero-Henriquez, the conspirators took steps to destroy evidence and conceal their crime and to avoid apprehension.

OVERT ACTS

In furtherance of the conspiracy and to effect the object thereof, the defendants and their co-conspirators performed the following overt acts in the Eastern District of Virginia and elsewhere:

1.    On or about April 7, 2016, ANDRES ALEXANDER VELASQUEZ GUEVARA sent Carlos Otero-Henriquez a Facebook friend request.

2.    In and around April 2016 through in and around early May 2016, VELASQUEZ GUEVARA obtained four photographs from Carlos Otero-Henriquez's Facebook profile of Otero-Henriquez flashing 18th Street gang signs, and shared the photographs with other members and associates of MS-13.

3.    On or about May 21, 2016, VELASQUEZ GUEVARA spoke with LAZO and a co-conspirator ("CC-1"), confirmed that Otero-Henriquez was with VELASQUEZ GUEVARA, and arranged to meet LAZO and CC-1, along with other members and associates of MS-13, to "deliver" Otero-Henriquez to them.

14

4.      On or about May 21, 2016, LAZO borrowed a Chevrolet Suburban, which was registered to SHANNON MARIE SANCHEZ, and used it to transport himself, MANUEL ANTONIO CENTENO, LELIS EZEQUIEL TREMINIO-TOBAR, CARLOS JOSE BENITEZ PEREIRA, DANIEL OSWALDO FLORES-MARAVILLA, Wilmar Javier Viera-Gonzalez, and CC-1 to a parking lot in Leesburg, Virginia, to pick up the victim from VELASQUEZ GUEVARA.

5.      On or about May 21, 2016, VELASQUEZ GUEVARA delivered Carlos Otero-Henriquez to LAZO, CENTENO, TREMINIO-TOBAR, PEREIRA, FLORES-MARAVILLA, Viera-Gonzalez, and CC-1 at a parking lot in Leesburg, Virginia.

6.      On or about May 21, 2016, in Leesburg, Virginia, LAZO, CENTENO, TREMINIO-TOBAR, PEREIRA, FLORES-MARAVILLA, Viera-Gonzalez, and CC-1 lured Otero-Henriquez into the Chevrolet Suburban in Leesburg, Virginia, under the pretense that they were going to a party.

7.      On or about May 21, 2016, LAZO, CENTENO, TREMINIO-TOBAR, PEREIRA, FLORES-MARAVILLA, Viera-Gonzalez, and CC-1 took Otero-Henriquez from Leesburg, Virginia to Harpers Ferry, West Virginia to kill him.

8.      On or about May 21, 2016, during the drive to West Virginia, Viera-Gonzalez pretended to befriend Otero-Henriquez while Viera-Gonzalez questioned him about being a member of the 18th Street gang.

9.      On or about May 21, 2016, in Harpers Ferry, West Virginia, LAZO, CENTENO, TREMINIO-TOBAR, PEREIRA, FLORES-MARAVILLA, Viera-Gonzalez, and CC-1 exited the Suburban with Otero-Henriquez, and led him onto a quarry property, out of view of the road.

10.     On or about May 21, 2016, in Harpers Ferry, West Virginia, LAZO returned to the Suburban to serve as a lookout and ensure that the parked Suburban did not draw any attention during the murder of Otero-Henriquez.

11.     On or about May 21, 2016, CENTENO, TREMINIO-TOBAR, PEREIRA, FLORES-MARAVILLA, Viera-Gonzalez, and CC-1 held, attacked, and murdered Otero-Henriquez, during which time Viera-Gonzalez questioned Otero-Henriquez about the 18th Street gang.

12.     On or about May 22, 2016, after Otero-Henriquez's murder, LAZO drove himself, CENTENO, TREMINIO-TOBAR, PEREIRA, FLORES-MARAVILLA, Viera-Gonzalez, and CC-1 from West Virginia to SANCHEZ's residence in Leesburg, Virginia.

13.     On or about May 22, 2016, while at SANCHEZ's residence in Leesburg, Virginia and with her assistance, LAZO, CENTENO, TREMINIO-TOBAR, PEREIRA, FLORES-MARAVILLA, Viera-Gonzalez, and CC-1 removed and burned their clothing used during the murder to destroy evidence linking them to Otero-Henriquez's murder.

14.     On or about May 24, 2016, VELASQUEZ GUEVARA removed Otero-Henriquez as a Facebook friend to conceal his involvement in Otero-Henriquez's disappearance and murder.

(In violation of Title 18, United States Code, Section 1201(c).)

16

COUNT SEVEN

(Conspiracy to Commit Kidnapping and Murder in Aid of Racketeering)

THE GRAND JURY FURTHER CHARGES THAT:

Introduction

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

The Racketeering Enterprise

MS-13, including its leaders, members, and associates, constitutes an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which is engaged in, and the activities of which affect, interstate and foreign commerce. MS-13 is an ongoing organization whose members and associates function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

Purpose of the Enterprise

The purposes of the MS-13 enterprise include the following:

(a) Preserving, expanding, and protecting the power, territory, and reputation of MS-13 through violence, threats of violence, and intimidation;

(b) Promoting and enhancing MS-13 and the activities of its members and associates by committing crimes, including, but not limited to, murder;

(c) Keeping victims, potential victims, and community members in fear of MS-13 and its members and associates through violence, threats of violence, and intimidation;

(d) Confronting and retaliating against rival gangs through the use of violence, threats of violence, and intimidation;

(e) Hindering and obstructing efforts of law enforcement to identify, apprehend, and

17

successfully prosecute offending gang members; and

(f) Providing financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador.

### Means and Methods of the Enterprise

Among the means and methods by which MS-13 members and associates conduct and participate in the affairs of the enterprise are the following:

(a) MS-13 members and associates use violence, threats of violence, and intimidation to preserve, protect, and expand the enterprise's territory and activities and to enhance its prestige, reputation, and position in the community;

(b) MS-13 members and associates promote a climate of fear through violence, threats of violence, and intimidation;

(c) MS-13 members and associates use violence, threats of violence, and intimidation to discipline and punish members and associates who violate enterprise rules;

(d) MS-13 members and associates use telephones to discuss gang-related business and to obtain approval for the use of violence to further the purposes of MS-13; and

(e) MS-13 members and associates collect dues to send to MS-13 members incarcerated in the United States and El Salvador and to MS-13 leadership in El Salvador, in an effort to provide financial support to the enterprise;

MS-13, through its members and associates, engages in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder and extortion,  in violation of the laws of the Commonwealth of Virginia; acts indictable under Title 18, United States Code, Sections 1503 (obstruction of justice), 1512 (witness tampering) and

2421 and 2422 (sex trafficking); and offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846.

In and around April 2016 through on or about May 24, 2016, in Leesburg, Virginia, within the Eastern District of Virginia and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendants MANUEL ANTONIO CENTENO, also known as "Darky" and "Madrid," DUBLAS ARISTIDES LAZO, also known as "Caballo," LELIS EZEQUIEL TREMINIO-TOBAR, also known as "Scooby," "Decente," and "Jefferson," CARLOS JOSE BENITEZ PEREIRA, also known as "Negro," DANIEL OSWALDO FLORES-MARAVILLA, also known as "Impaciente," "Flaco," and "Gatito," and SHANNON MARIE SANCHEZ, also known as "Flaca," did knowingly combine, conspire, confederate, and agree with each other, and with others, known and unknown to the grand jury, to kidnap and murder Carlos Otero-Henriquez, in violation of the laws of the Commonwealth of Virginia, specifically Va. Code Ann. §§ 18.2-22, 18.2-32 and 18.2-47.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

<u>COUNT EIGHT</u>

(Kidnapping Resulting in Death)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about May 21, 2016, defendants MANUEL ANTONIO CENTENO, also known as "Darky" and "Madrid," DUBLAS ARISTIDES LAZO, also known as "Caballo," LELIS EZEQUIEL TREMINIO-TOBAR, also known as "Scooby," "Decente," and "Jefferson," CARLOS JOSE BENITEZ PEREIRA, also known as "Negro," and DANIEL OSWALDO FLORES-MARAVILLA, also known as "Impaciente," "Flaco," and "Gatito," did unlawfully and willfully seize, inveigle, decoy, kidnap, abduct, and carry away and hold Carlos Otero-Henriquez for ransom, reward and otherwise, namely for the purpose of killing him because he was believed to be a rival gang member, and, in committing and in furtherance of the commission of the offense, did willfully transport Carlos Otero-Henriquez in interstate commerce from Leesburg, Virginia, in the Eastern District of Virginia, to West Virginia, and did aid, abet, counsel, command, induce, and cause another to commit said offense, and Carlos Otero-Henriquez died as a result of the offense.

(In violation of Title 18, United States Code, Sections 1201(a)(1) and 2.)

<u>COUNT NINE</u>

(Accessory After the Fact)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this third superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about May 22, 2016, in Leesburg, Virginia, within the Eastern District of Virginia, defendant SHANNON MARIE SANCHEZ, also known as "Flaca," knowing that an offense against the United States had been committed, namely the kidnapping resulting in the death of Carlos Otero-Henriquez on or about May 21, 2016, as described in Count Eight of this third superseding indictment, in violation of Title 18, United States Code, Sections 1201(a)(1) and 2, knowingly received, relieved, comforted, and assisted the offenders in order to hinder and prevent their apprehension, trial, and punishment, to wit: the defendant received the offenders in her home immediately following the crime, helped them burn the clothing they wore during the commission of the crime, and helped them clean the knife and her Chevrolet Suburban which were used during the commission of the crime.

(In violation of Title 18, United States Code, Section 3.)

## COUNT TEN

(Illegal Re-entry After Deportation)

On or about April 9, 2016, in Fairfax County, Virginia, within the Eastern District of

Virginia, defendant MANUEL ANTONIO CENTENO, an alien, was found in the United States

after having been deported and removed therefrom on or about August 27, 2004, at or near

Houston, Texas, and on or about October 12, 2011, at or near Mesa, Arizona, and not having

obtained the express consent of the Attorney General or the Secretary of Homeland Security to

reapply for admission in the United States.

(In violation of Title 8, United States Code, Section 1326(a).)

FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE TO BELIEVE THAT:

Defendants JUAN CARLOS GUADRON-RODRIGUEZ and MANUEL ANTONIO

CENTENO, if convicted of Counts One through Five of this third superseding indictment, shall

forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes

or is derived from proceeds of the offenses charged in those counts. This property includes, but

is not limited to:

(1)    approximately $200 in United States currency taken in or around late January

2016;

(2)    approximately $150 in United States currency taken on March 3, 2016;

(3)    approximately $100 in United States currency taken on March 23, 2016;

(4)    approximately $100 in United States currency taken on March 31, 2016; and

(5)    approximately $200 in United States currency taken on April 14, 2016.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), the defendants shall forfeit substitute property, up to the

value of the amount described above, if by any act or omission of the defendants, the property

described above, or any portion thereof, cannot be located upon the exercise of due diligence;

has been transferred, sold, or substantially diminished in value; or has been commingled with

other property which cannot be divided without difficulty.


(Pursuant to Title 18, United States Code, Section 981(a)(1)(C); and Title 28, United States
Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
Foreperson of the Grand Jury

Dana J. Boente
United States Attorney

By: _____
Patricia T. Giles
Assistant United States Attorney

_____
Tobias D. Tobler
Assistant United States Attorney

_____
Morris R. Parker, Jr.
Assistant United States Attorney